**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| John Anthony Spencer, | Civ. No. 13-177 (JNE/JJK) |
| Plaintiff, | |
| v. | |
| Warden FPC Duluth,<br>CO Anderson, CO Baker,<br>CO Grabddl, CO Brian H.,<br>Unknown CO with CO Baker<br>on 12-19-12, Mail Room Staff<br>of Dec. 12, 2012 FPC Duluth, et al., | **REPORT AND<br>RECOMMENDATION** |
| Defendants. | |

John Anthony Spencer, P.O. Box 1000, FCI-Sandstone, Sandstone, MN 55072, *pro se*.

Lonnie F. Bryan, Esq., Assistant United States Attorney, for Defendants.

JEFFREY J. KEYES, United States Magistrate Judge

**INTRODUCTION**

      This matter is before this Court on Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), failure to state a claim upon which relief may be granted. (Doc. No. 49.) Plaintiff John Anthony Spencer is a prisoner presently incarcerated at the Federal Correctional Institution in Sandstone, Minnesota ("FCI-Sandstone"). The claims in this case arose while Plaintiff was incarcerated at the Federal Prison Camp in Duluth, Minnesota ("FPC-Duluth"). He brings this action under *Bivens v. Six Unknown Named Agents of the Federal Bureau of*

*Narcotics*, 403 U.S. 388 (1971), claiming that several U.S. Bureau of Prisons ("BOP") employees ("Defendants") conspired to and did violate Plaintiff's constitutional rights to due process by denying him access to the grievance process, courts, counsel, and legal work product, and by retaliating against him for attempting to exercise his rights while he was incarcerated at FPC-Duluth. (Doc. No. 26-1 ¶¶ 70–74.)[1] The motion has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1.

Defendants move to dismiss on the ground that Plaintiff failed to exhaust all administrative remedies available to him before commencing this action in federal court. (Doc. Nos. 49 and 50.)[2] In response, Plaintiff contends that he was prohibited from accessing the administrative remedy system despite repeated attempts to file the appropriate grievances at FPC-Duluth. (Doc. No. 56 at 7–10.)[3] Defendants concede that if their acts prevented Plaintiff from exhausting administrative remedies, the failure to exhaust "should be excused because Defendant would have satisfied the requirements of Section 1997e(a)."

---

[1] Doc. No. 26 is Plaintiff's form Amended Complaint for Violation of Civil Rights under 42 U.S.C. 1983. Doc. No. 26-1 is a Statement of Facts and Legal Claims.

[2] Doc. No. 49 is Defendants' Motion to Dismiss and Doc. No. 50 is Defendants' Memorandum in Support of Motion to Dismiss.

[3] Doc. No. 56 is Plaintiff's Response to Defendants' Motion to Dismiss and Exhibits.

(Doc. No. 57 at 8.)[4]  But Defendants also argue that Plaintiff did have available remedies after he was transferred to FCI-Sandstone.  Plaintiff, on the other hand, insists that he had no obligation to further request administrative review upon transfer to FCI-Sandstone because FPC-Duluth bore the responsibility of responding to grievance requests made prior to his transfer.  (Doc. No. 56 at 11.)

The matter is now before the Court for determination on whether Plaintiff's administrative remedy requests while at FCP-Duluth and the Douglas County Jail[5] were sufficient to satisfy the exhaustion requirement, allowing him to survive the present motion to dismiss.  For the reasons stated below, this Court concludes that Defendants' Motion to Dismiss should be denied.

**BACKGROUND**

Plaintiff alleges that on December 12, 2012, he was escorted to an office area at FPC-Duluth where he was served a subpoena for a telephonic deposition in a civil case venued in Dubuque County, Iowa.  The subpoena was delivered by a process server who advised Plaintiff that Minnesota statute, along with court

---

[4]     Doc. No. 57 is Defendants' Reply to Plaintiff's Response to Defendants' Motion to Dismiss.

[5]     Previous affidavits filed in this action (Doc. Nos. 12 and 13) reference Plaintiff's temporary incarceration and hold in segregation in the Douglas County Jail in Wisconsin in February 2013. The Douglas County detention is not referenced in the Amended Complaint filed on July 10, 2013, and circumstances of that detention are not extensively discussed in the present motion to dismiss or responsive materials, although Plaintiff states in his memorandum that he was removed to the Douglas County Jail shortly after January 8, 2013 (Doc. No. 56 at 9), and exhibits submitted by the Plaintiff indicate that he requested BP-9 and/or BP-10 forms while he was incarcerated in segregation in Douglas County during January 2013.  (Doc. No. 56-2, Attach. 7.)

3

rules, required that a $20 witness fee be paid upon service of the subpoena. At that time, BOP staff instructed Plaintiff to sign for service, but indicated that he might not be permitted to have the $20 check. Plaintiff then advised the process server and BOP staff that he would not comply with the subpoena unless he received the witness fee. Later that day, Plaintiff was summoned to the office of his dorm counselor, Defendant Anderson, who told Plaintiff that he would be called to the office on December 17, 2012, for the deposition. Plaintiff again stated that he would not participate unless he received the $20 witness fee, and in any event, the subpoena appeared to involve matters with respect to which he would likely assert the Fifth Amendment. Later that evening, Plaintiff received a BOP notice that the process server had attempted to deliver the check, but it was determined to be a prohibited negotiable instrument and was rejected and returned. (Doc. No. 26-1 at ¶ 21.)

Plaintiff thereafter sent written messages to the Warden and Defendant Baker expressing his objection to being denied the witness fee and indicating that he did not intend to comply with the subpoena. (*Id.* at 3.) On December 17, 2012, Plaintiff was called to Defendant Anderson's office for the telephone deposition. Plaintiff was not wholly compliant in giving testimony, and he and Anderson engaged in argument regarding Plaintiff's willingness to sign certain documents as directed by Anderson. Plaintiff alleges that his refusal to cooperate led to a punitive job reassignment as well as disciplinary action which

resulted in some unspecified time in segregation and instructions to cease doing legal work for other inmates. (*Id.* at 5-6.)

The Amended Complaint references a series of Plaintiff's grievances and requests for legal supplies and materials in January 2013, including three requests for BP-10[6] grievance appeal forms.  Plaintiff alleges that he was denied the forms and discouraged from filing appeals. (*Id.* at 7.)  Specifically, with regard to the present motion to dismiss, the Amended Complaint alleges that between December 22, 2012 and March 1, 2013, Plaintiff was denied any meaningful access to the grievance system as a result of threats and staff simply ignoring his requests. (*Id.* at ¶ 61.)  Plaintiff was transferred to FPC-Sandstone on either February 21, 2013 or March 1, 2013.[7]  Plaintiff expressed difficulty in accessing basic supplies to continue his legal claims upon his transfer to FCI-Sandstone. (*Id.* at 9.)  He does not, however, allege in the Amended Complaint

---

[6] *See* BOP Program Statement 1330.18, Administrative Remedy Program, implementing 28 C.F.R. § 542.10 *et seq.* wherein BOP grievance policy is articulated, under which an inmate must first seek informal resolution by presenting an issue of concern to prison staff.  If the matter is not resolved within 20 days, the inmate may submit a BP-9, Administrative Remedy Request form, to the Warden at the institution level.  Subsequent appeals are to be submitted on BOP forms such that a BP-10 is used to file an appeal of the Warden's decision to the Regional Director, and a BP-11 is used to file an appeal of the Regional Director's decision to the Central Office.  The appropriate form is to be obtained from institution staff, typically the correctional counselor. 28 C.F.R. §542.14(c)(1).

[7] Plaintiff claims he was transferred to FCI-Sandstone on March 1, 2013, but the Defendants assert the transfer took place on February 21, 2013.  (Doc. No. 51, Decl. of Standefer-Malott ¶ 3.)  The exact date does not appear to be material to the present motion.

that he attempted to file a new administrative grievance or exhaust administrative remedies after his transfer to FCI-Sandstone.

## **DISCUSSION**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e was enacted "to address the large number of prisoner complaints filed in federal courts[.]" *Jones v. Bock*, 549 U.S. 199, 202 (2007). Section 1997e(a) states that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA aims to reduce "frivolous" prisoner complaints, yet does not alter the U.S. legal system's "commit[ment] to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law." *Jones*, 549 U.S. at 203.

Exhaustion "serves two main purposes[:]" (1) it "protects administrative agency authority[,]" and (2) it "promotes efficiency." *Woodford v. Ngo*, 548 U.S 81, 89 (2006) (internal citations omitted). The first purpose is to give the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Id.* The second purpose keeps resolvable issues out of court and creates "a useful record for subsequent judicial consideration" in cases that do proceed to trial. *Id.* Failure to exhaust is an affirmative defense under Fed. R. Civ. P. 8(c), *Foulk v. Charrier*, 262 F.3d 687, 697 (8th Cir. 2001), and the burden rests on the defendant to plead and prove

6

"that a plaintiff prisoner failed to exhaust all available remedies under the PLRA[.]" *Lyon v. Vande Krol*, 305 F.3rd 806, 809 (8th Cir. 2002); *Foulk*, 262 F.3d at 697. The terms "available" and "exhausted" are critical in determining whether a petitioner has satisfied the PLRA requirements.

To exhaust all administrative remedies, a petitioner must do so "properly." *Woodford v. Ngo*, 548 U.S. at 88. This means completing "the administrative review process in accordance with the applicable procedural rules" of the prison remedy system. *Jones*, 549 U.S. at 218. The requirements of the prison in question, rather than the PLRA, "define the boundaries of proper exhaustion." *Id.* "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Id.* The prisoner must properly utilize "all steps that the agency holds out . . . (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Proper exhaustion includes "compliance with an agency's deadlines and other critical procedural rules[.]" *Id.*

For exhaustion of remedies to serve its purposes, those remedies must be "available." Section 1983 does not define "available," but the Eighth Circuit understands the "plain meaning" to be that which is "capable of use for the accomplishment of a purpose: immediately utilizable . . . accessible." *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001). The prison cannot prevent prisoners from exhausting, because doing so creates an unavailable remedy under 1997e(a). *Id.*; *Lyon v. Vande Krol*, 305 F.3d at 808. A prisoner's subjective

belief that the procedures are unavailable, however, is not sufficient, even if logical, to show legal unavailability. *Lyon*, 305 F.3d at 809.

With respect to a motion to dismiss, the Eighth Circuit has concluded that a district court lacked factual basis to dismiss for failure to exhaust when prison officials refused to respond to a prisoner's informal resolution request. *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001); *see also Miller v. Norris*, 247 F.3d at 740 (stating that a remedy that prison officials prevent a prisoner from 'utilizing' is not an 'available' remedy).

In *Foulk*, the defendant claimed failure to exhaust because the plaintiff never officially filed a grievance despite his filing an informal resolution request ("IRR"). *Foulk*, 262 F.3d at 697–98. The defendant established the following relevant facts: (1) "that Foulk filed an IRR," (2) that the facility "failed to respond," and (3) that "Foulk thereafter did not file a grievance or grievance appeal." *Id.* at 698. Additionally, the prisoner had been transferred to a different facility and made no reference to subsequent filing of a grievance upon transfer. *Id.* The Eighth Circuit found these facts—without pointing to evidence in the record establishing that Foulk could have filed a grievance after the prison's failure to respond to his informal request—insufficient to prove failure to exhaust. *Id.*

In *Miller*, the plaintiff requested grievance forms from the Arkansas Department of Correction ("ADC") and alleged he never received a response. *Miller*, 247 F.3d at 738. The Eighth Circuit concluded that Miller's allegations

"raise an inference that he was prevented from utilizing the prison's administrative remedies." *Id.* at 740.

Here, to survive Defendants' Motion to Dismiss, Plaintiff must have put forth sufficient facts which, accepted as true, "state a claim to relief that is plausible on its face," *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007), as to whether the BOP failed to make the appropriate administrative remedies "available" to Plaintiff. In other words, under §1997e(a) Plaintiff need only "raise an inference" that he was prevented from utilizing the administrative process, *i.e.*, that he exhausted his "available" remedies. *Miller*, 247 F.3d at 740. The burden then rests on Defendants to assert and prove the affirmative defense "that a plaintiff prisoner failed to exhaust all available remedies under the PLRA[.]" *Lyon*, 305 F.3d 809; *Foulk*, 262 F.3d at 697.

Defendants contend that Plaintiff's complaint letters are insufficient to satisfy administrative exhaustion requirements because use of specific BOP forms is required to engage the administrative remedy system. (Doc. 50 at 6–7.) Defendants do not directly address Plaintiff's alleged repeated requests for official forms, (*see, e.g.*, Doc. No. 26-1 at 7), although they do acknowledge that Plaintiff requested a BP-10. In that regard, Defendants simply assert that a BP-10 is an "irrelevant and inappropriate vehicle to exhaust his administrative remedies" unless a BP-9 is first presented. (Doc. No. 50 at 6-7, n.4.) However, 28 C.F.R. § 542.14(d) provides that, "If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the

9

Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director." (U.S. Department of Justice Federal Bureau of Prisons, Program Statement, Administrative Remedy Program, 6 (Jan. 6, 2014).) Also, the record contains evidence that Plaintiff did request BP-9 forms. (Doc. No. 56-2 at 14.)[8]

Plaintiff's Response to Defendants' Motion to Dismiss adds additional alleged attempts made to access the BOP administrative remedy system. Plaintiff first requested a BP-8 form[9] for an informal remedy and was allegedly denied the form by Defendant Anderson in a manner leading the Plaintiff to believe "that the administrative process was corrupt." (Doc. No. 56 at 6.) Plaintiff claims his repeated requests for access to the administrative remedy process were ignored. (*Id.* at 7.) Plaintiff submitted copies of the Inmate Request Forms he submitted from December 27, 2012 through February 14, 2013, requesting administrative relief, as attachments to his Response to Defendants' Motion to Dismiss (*see* Doc. No. 56-2).

Plaintiff did receive a response to his Inmate Request dated January 2, 2013, through which he requested a BP-10 form, stating that he had a serious concern that he wanted to communicate directly to Region (*Id.*, attach. 3). The

---

[8] The requests were submitted on Douglas County Jail Inmate Request Forms dated January 18, 2013 and January 19, 2013, presumably while Plaintiff was being temporarily held at that facility.

[9] A BP-8 is not referenced in BOP Program Statement 1330.17. BP-8 appears to be the form designation used for the initiating an informal grievance at FCI-Duluth.

10

response simply read: "Submit a new cop-out clarifying your concerns."[10] (Doc. 56 at 6.) The officer who served Plaintiff with this response told Plaintiff that he would receive the BP-10 only if SIS[11] approves. (*Id.* at 8.) Plaintiff then submitted another Inmate Request form attempting to clarify his concerns as requested. He asserts that the request was ignored. (*Id.*)

Plaintiff alleges that he made no direct attempts to access the grievance system after transfer to FCI-Sandstone because he relied on BOP procedure—Program Statement 1330.18, Section 13.a—which states: "If an inmate is transferred after giving the Request to a staff member, but before that Request is logged in or answered, the institution where the Request was first given to a staff member remains responsible for logging and responding to that Request." (Doc. No. 56 at 11.) Defendants point to Plaintiff's inaction after his transfer to FCI-Sandstone as the basis for their contention that he failed to exhaust administrative remedies. (Doc. No. 57 at 10.) Defendants further argue that the Program Statement 1330.18, Section 13.a. reference to "Request" is a reference to the actual request for a remedy, rather than a request for the BP-9 form.

On consideration of the record pertinent to this motion, this Court cannot conclude that as a matter of law the Plaintiff has failed to exhaust his remedies. Exhaustion of administrative remedies is an affirmative defense and Defendants carry the burden of proving the defense. *Lyon*, 305 F.3d at 809; *Foulk*, 262 F.3d

---

[10] A cop-out is an Inmate Request Form. (Doc. 57 at 4.)

[11] Special Investigative Services.

11

at 697. Defendant has established that Plaintiff did not engage in the administrative remedy process after he had been transferred to FCI-Sandstone, but this failure is not dispositive as to Plaintiff's efforts to exhaust under circumstances in which he had requested and been denied informal grievance forms, as well as formal BOP appeals forms, during incarcerations at FPC-Duluth and the Douglas County Jail. *Foulk*, 262 F.3d at 698. Plaintiff's allegations in this regard are largely unrefuted. And Plaintiff has made a showing that is, at a minimum, sufficient to raise the inference that he was prevented from accessing the BOP administrative remedy process. *Miller*, 247 F.3d 736 at 740. The court lacks a factual basis to dismiss for failure to exhaust when prison officials refuse to respond to a prisoner's informal resolution request. *Foulk*, 262 F.3d at 698. This Court therefore concludes that Defendants' motion to dismiss for failure to exhaust administrative remedies should be denied.

## RECOMMENDATION

Based on the foregoing, and the entire file and record in this case, the Court **Hereby Recommends** that:

    1. Defendants' Motion to Dismiss (Doc. No. 49) be **DENIED**; and

    2. In the event this Recommendation is adopted, Defendants should be ordered to serve and file their Answer to the Amended Complaint within 30 days following issuance of the District Court's Order.

Dated:  September 3, 2014

s/*Jeffrey J. Keyes*_____
Jeffrey J. Keyes
United States Magistrate Judge

   Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **September 17, 2014,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen days** after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.